**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

JASON LEOPOLD, *et al.*,

       Plaintiffs,

    v.

U.S. DEPARTMENT OF JUSTICE,

       Defendant.

Case No. 1:21-cv-00942-TNM

## DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR FEES AND COSTS

## **TABLE OF CONTENTS**

INTRODUCTION..............................................................................................................1

BACKGROUND...............................................................................................................2

I.     THE EXECUTIVE OFFICE OF IMMIGRATION REVIEW........................................2

II.    PLAINTIFF'S FOIA REQUESTS. ............................................................................3

III.   PROCEDURAL BACKGROUND .............................................................................4

IV.   THE RECORD AT ISSUE. ........................................................................................6

LEGAL STANDARD ......................................................................................................7

ARGUMENT....................................................................................................................8

I.     PLAINTIFFS HAVE NOT DEMONSTRATED THAT THEY ARE ELIGIBLE
FOR FEES UNDER THE FOIA BECAUSE THEY HAVE NOT SHOWN THAT
A LAWSUIT WAS NECESSARY FOR ATTAINING THE REQUESTED E-
MAILS. .........................................................................................................................9

II.    PLAINTIFFS HAVE NOT DEMONSTRATED THAT ANY OF THE
ENTITLEMENT FACTORS WEIGH IN FAVOR OF A FEE AWARD.....................12

      A.    The First Factor Does Not Weigh in Favor of a Fee Award Given the Lack
of Any Public Benefit in Submitting this Request to an Agency that
Administers Immigration Courts.....................................................................13

      B.    The Second and Third Factors Do Not Weigh in Favor of a Fee Award
Because Taxpayers Should Not Bear the Cost of a FOIA Request of Little
Public Benefit, Like the One at Issue Here.....................................................17

      C.    The Fourth Factor Weighs Against a Fee Award Because EOIR's Conduct
was Reasonable................................................................................................20

            1.    EOIR had a Colorable Basis for its Initial Decision Not to Disclose
the E-Mails Under Exemption 5 Based on the Deliberative Process
Privilege.............................................................................................20

            2.    EOIR Was Neither Recalcitrant in its Opposition to a Valid Claim
Nor Otherwise Engaged in Obdurate Behavior...................................22

III.   IN THE ALTERNATIVE, IF THE COURT CONCLUDES THAT PLAINTIFFS
ARE ELIGIBLE AND ENTITLED TO FEES, IT SHOULD AWARD A
SIGNIFICANTLY REDUCED AMOUNT ...................................................................24

    A.   Taxpayers Should Not Compensate Plaintiffs for Time Their Counsel
Spent Addressing Duplicative and Unproductive Complaints Involving
Improper Claim-Splitting. ...............................................................................25

    B.   Plaintiffs Are Not Entitled to "Fees on Fees." ...................................................26

    C.   Plaintiffs' "Fees on Fees" Request Should be Reduced Because it is
Represents an Unreasonable Amount of Time to Spent Seeking Taxpayer
Financing of the Amount of Hours Spent Addressing the Merits of This
Case. .................................................................................................................27

CONCLUSION ...............................................................................................................................29

## TABLE OF AUTHORITIES

**Cases**

*All. for Responsible CFC Policy, Inc. v. Costle,*
    631 F. Supp. 1469, 1470 (D.D.C. 1986) ......................................................... 10

*Air Line Pilots Ass'n, Int'l v. Civil Aeronautics Bd.,*
    750 F.2d 81 (D.C. Cir. 1984) .......................................................................... 5

*Am. Ctr. for L. & Just. v. U.S. Dep't of Justice,*
    325 F. Supp. 3d 162 (D.D.C. 2018) ................................................................ 22

*Am. Ctr. for L. and Just. v. U.S. Dep't of Homeland Security,*
    573 F. Supp. 3d 78 (D.D.C. 2021) ........................................................ 18, 23, 28

*\*Assassination Archives and Rsch. Ctr., Inc. v. CIA,*
    No. 1:17-cv-00160, 2019 WL 1491982 (D.D.C. Apr. 4, 2019) *aff'd* 2019
    WL 4565818 (D.C .Cir. Sep 06, 2019). ................................................ 17, 18, 20

*Bartholdi Cable Co. v. FCC,*
    114 F.3d 274 (D.C. Cir. 1997) ........................................................................ 11

*Baylor v. Mitchell Rubenstein & Associates, P.C.,*
    282 F. Supp. 3d 203 (D.D.C. 2017) ................................................................ 26

*\*Baylor v. Mitchell Rubenstein & Associates, P.C.,*
    735 F. App'x 733 (D.C. Cir. 2018) ........................................................ 26, 27, 29

*Baylor v. Mitchell Rubsenstein & Associates, P.C.,*
    857 F.3d 939 (D.C. Cir. 2017) ........................................................ 26, 27, 28, 29

*Bd. of Trs. Of Hotel & Rest. Emps. Local 25 v. JPR, Inc.,*
    136 F.3d 794 (D.C. Cir. 1998) ........................................................................ 24

*Boehner v. McDermott,*
    541 F. Supp. 2d 310 (D.D.C. 2008) ................................................................ 26

*\*Brayton v. Office of the U.S. Trade Representative,*
    641 F.3d 521 (D.C. Cir. 2011) ........................................................ 7, 10, 12, 22

*Brennan Ctr. for Justice v. U.S. Dep't of Homeland Sec.,*
    Civ. A. No. 16-1609, 2019 WL 280954 (D.D.C. Jan. 22, 2019) ................... 27, 28

*Chesapeake Bay Found. Inc.  v U.S. Dep't of Agric.,*
    11 F.3d 211 (D.C. Cir. 1993) .......................................................................... 12

*Chrysler Corp. v. Brown*,
441 U.S. 281 (1979)............................................................................................10

*Church of Scientology of Cal. v. Harris*,
653 F.2d 584 (D.C. Cir. 1981 .......................................................................7, 10

*Citizens for Responsibility and Ethics in Washington ("CREW") v. U.S. Dep't* of Justice,
83 F. Supp. 3d 297 (D.D.C. 2015) ..................................................................9, 10

*Clayton v. Dist. of Columbia*,
36 F. Supp. 3d 91 (D.D.C. 2014)........................................................................25

*Commissioner, I.N.S. v. Jean*,
496 U.S. 154 (1990)............................................................................................26

*Conservation Force v. Jewell*,
160 F. Supp. 3d 194 (D.D.C. 2016) ...........................................................9, 10, 24

*Cornucopia Inst. v. Agric. Mktg. Serv.*,
285 F. Supp. 3d 217 (D.D.C. 2018) *aff'd* 2018 WL 5115535 (D.C.Cir. Oct. 11, 2018).........27

*\*Cotton v. Heyman*,
63 F.3d 1115 (D.C. Cir. 1995)......................................................................13, 16

*Covington v. District of Columbia*,
57 F.3d 1101 (D.C. Cir. 1995).............................................................................8

*Cuneo v. Rumsfeld*,
553 F.2d 1360 (D.C. Cir. 1977).......................................................................7, 22

*Curtis v. Citibank, N.A.*,
226 F.3d 133 (2d Cir. 2000)...............................................................................25

*\*Davy v. C.I.A.*,
550 F.3d 1155 (D.C. Cir. 2008).................................................................*passim*

*Dep't of Interior v. Klamath Water Users Protective Ass'n*,
532 U.S. 1 (2001) ..............................................................................................21

*\*Dorsen v. U.S. Securities and Exchange Comm'n*,
15 F. Supp. 3d 112 (D.D.C. 2014)..............................................................12, 20, 22

*Elec. Priv. Info. Ctr. v. U.S. Dep't of Homeland Security*,
("EPIC I") 811 F. Supp. 2d 216 (D.D.C. 2011) .................................................17

*Elec. Priv. Info. Ctr v. Dep't of Homeland Sec. II ("EPIC II")*,
218 F. Supp. 3d 27 (D.D.C. 2016)......................................................................24

iv

*Elec. Priv. Info.Ctr. v. Fed. Bureau of Investigation*,
    80 F. Supp. 3d 149 (D.D.C. 2015) ....................................................... 27

\*Env't. Def. Fund, Inc. v. Reilly,
    1 F.3d 1254 (D.C. Cir. 1993) ...................................................... 8, 25, 27

*EPA v. Mink*,
    410 U.S. 73 (1973) .............................................................................. 21

\*Fenster v. Brown,
    617 F.2d 740 (D.C. Cir. 1979) ................................................. 13, 17, 20

*Hensley v. Eckerhart*,
    461 U.S. 424 (1983) .............................................................................. 8

*In re Apollo Grp., Inc. Sec. Litig.*,
    251 F.R.D. 12 (D.D.C. 2008) *aff'd on other grounds and remanded by*, 329 F. App'x 283
    (D.C. Cir. 2009) ................................................................................. 21

*Jordan v. U.S. Dep't of Justice*,
    591 F.2d 753 (D.C. Cir. 1978) ........................................................... 22

*Judicial Watch, Inc. v. U.S. Dep't of Justice*,
    878 F. Supp. 2d 225 (D.D.C. 2012) ................................................... 24

*Krikorian v. Dep't of State*,
    984 F.2d 461 (D.C. Cir. 1993) ........................................................... 21

*LaShawn A. v. Barry*,
    Civ. No. 89-1754, 1998 WL 35243112 (D.D.C. Feb. 18, 1998) ......................... 29

*Leopold v. Office of Director of Nat'l Intelligence*,
    442 F. Supp. 3d 266 (D.D.C. Feb. 18, 2020) ..................................... 21

*Leopold v. U.S. Dep't of Justice*,
    No. 21-cv-0558, 2021 WL 2073352 (D.D.C. May 24, 2021) ................. 16, 23

*Machado Amadis v. U.S. Dep't of State*,
    971 F.3d 364 (D.C. Cir. 2020) ........................................................... 22

*McKinley v. Fed. Housing Finance Agency*,
    739 F.3d 707 (D.C. Cir. 2014) ........................................................... 13

*Merrick v. Dist. of Columbia*,
    316 F. Supp. 3d 498 (D.D.C. 2018) ................................................... 27

*Morley v. C.I.A.*,
    719 F.3d 689 (D.C. Cir. 2013) ................................................. 8, 12, 20

*Morley v. CIA,
    245 F. Supp. 3d 74 (D.D.C. 2017)............................................................... *passim*

Morley v. CIA,
    810 F.3d 841 (D.C. Cir.2016)................................................................ 16

*Morley v. CIA,
    894 F. 3d 389 (D.C. Cir. 2018)................................................15, 20, 23

N.Y.C. Apparel F.Z.E. v. U.S. Customs and Border Prot. Bureau,
    563 F. Supp. 2d 217 (D.D.C. 2008) ....................................................... 9

Nationwide Bldg. Maint., Inc. v. Sampson,
    559 F.2d 704 (D.C. Cir. 1977).................................................................. 7

Nat'l Ass'n of Concerned Verterans v. Sec'y of Def.,
    675 F.2d 1319 (D.C. Cir. 1982)............................................................. 25

Newman v. Fed. Bureau of Prisons,
    No. 1:20-cv-3761, 2022 WL 1521797 (D.D.C. May 13, 2022) ........................... 28

People for the Am. Way Found. v. Nat'l Park Serv.,
    503 F. Supp. 2d 284 (D.D.C. 2007) ..................................................... 21

Responsible CFC Policy, Inc. v. Costle,
    631 F. Supp. 1469 (D.D.C. 1986) ....................................................... 10

STS Energy Partners LP v. FERC,
    214 F. Supp. 3d 66 (D.D.C. 2016) ....................................................... 12

*Tax Analysts v. U.S. Dep't of Justice,
    965 F.2d 1092 (D.C. Cir. 1992)........................................................... *passim*

U.S. Fish & Wildlife Serv. v. Sierra Club, Inc.,
    141 S. Ct. 777 (2021)................................................................. 20, 21

Ustrak v. Fairman,
    851 F.2d 983 (7th Cir. 1988)............................................................. 24, 28

Weisberg v. U.S. Dep't of Justice,
    745 F.2d 1476 (D.C. Cir. 1984)........................................................ 10, 24

## Statutes

5 U.S.C. § 552................................................................................7, 9, 20, 22

Cybersecurity And Infrastructure Security Agency Act Of 2018,
    Pub. L. 115-278 132 Stat. 4168 ........................................................... 5

vi

**Rules**

Fed. R. Civ. P. 25(d).................................................................................................................5

**Other Authorities**

National Archives-FOIA Dispute Resolution,
    https://www.archives.gov/ogis/mediation-program (last visited Sept. 14, 2022) .................11

EOIR- About,
    https://www.justice.gov/eoir/about-office ..........................................................15

Jason Leopold, Twitter Feed and Bio,
    https://twitter.com/JasonLeopold..........................................................18

The FOIA Project – When FOIA Goes to Court: 20 Years of Freedom of Information Act
    Litigation by News Organizations and Report,
    https://foiaproject.org/2021/01/13/foialitigators2020 ..........................................18

Buzzfeed Inc. Investor Presentation, August 2022,
    https://investors.buzzfeed.com/static-files/740e1de3-921f-4e48-9f51-61bc177fa38f ...........20

,

## INTRODUCTION

Plaintiffs Jason Leopold and Buzzfeed, Inc. have submitted countless FOIA requests to many dozens of agencies and components across the Federal Government that are nearly identical to the FOIA request that they submitted to the Executive Office of Immigration Review ("EOIR")—the agency that administers our nation's immigration courts—at issue in this case. The requests sought a broad array of documents relating to the events occurring at the Capitol on January 6, 2021. Notwithstanding its breadth, EOIR expeditiously completed processing the request and Plaintiffs filed this lawsuit against EOIR at the earliest possible opportunity before meaningfully engaging with the agency in any way.

EOIR had initially withheld only one e-mail chain under Exemption 5. But after Plaintiffs pressed the agency, EOIR relented for the sake of transparency and judicial and party economy and determined to make a discretionary release of the requested material. Unsurprisingly, given EOIR's role, the record did not include information of great social value. To the contrary, it included discussion drafts of an e-mail to EOIR personnel in the Washington, DC area telling them to go home early because of the curfew Mayor Bowser had imposed on January 6, 2021. It is no different than the type of e-mail chain that many managers throughout the region may have sent to employees on that day. Instead of contributing something valuable to the public, the released e-mail chain provides Plaintiffs and the public little more than the satisfaction of reviewing the emails of EOIR leadership.

Despite accomplishing almost nothing by filing this suit against EOIR, Plaintiffs seek to have the taxpayer finance it. The fee award they seek for this minor matter exceeds $11,000. It includes $2,279.50 addressing work up until the parties' agreement in principle to resolve the merits of this case—mostly for joint status reports that were primarily drafted by undersigned counsel and for their time reviewing this Court's Minute Orders – and an astonishing $9,212.40 for negotiation over and preparation of the present motion for fees and costs.

Plaintiffs' motion should be rejected. They are not eligible for fees because they have not shown that the lawsuit that they filed at the earliest possible opportunity was necessary for EOIR

1

to have discretionary released the emails that it initially withheld.  And even if they were eligible, they are not entitled to fees.  EOIR's initial withholding was justified under Exemption 5.  At the very least, it was founded upon a colorable basis in law.  Moreover, there was no objectively reasonable public benefit in submitting their boilerplate FOIA Request to EOIR, which has nothing to do with the subject matter.

Even if Plaintiffs were both eligible and entitled to a fee award, which they are not, fees should be severely reduced.  First, Plaintiffs are seeking to recover for the time they spent preparing and correcting several pleadings because their initial complaint duplicated claims that they filed in another court in this district.  The Court should not permit Plaintiffs to recover for the unproductive work that their counsel created for the parties by filing a complaint raising duplicative claims.  And a fees-on-fees award in this case is unreasonable.  It is not reasonable for Plaintiffs to expend many times the few hours spent on the merits of this case seeking to justify taxpayer financing for those few hours, let alone have EOIR pay for that time as well.  Accordingly, the Court should not order EOIR to pay for the amount Plaintiffs seek to pay their attorneys for the time spent on the pending motion.

## **BACKGROUND**

### I.   **The Executive Office of Immigration Review**

The Executive Office for Immigration Review is a component of the Department of Justice.  *See* Declaration of Joseph R. Schaaf ("Schaaf Decl.") ¶ 4.  EOIR was created on January 9, 1983, through an internal DOJ reorganization which combined the Board of Immigration Appeals with the Immigration Judge function previously performed by the former Immigration and Naturalization Service (now part of the Department of Homeland Security).  *Id*.  Besides establishing EOIR as a separate agency within DOJ, this reorganization made the Immigration Courts independent of INS, the agency that had been charged with enforcement of Federal immigration laws.  *Id*.  In that regard, EOIR does not have a law enforcement mission.  *See id*.

The primary mission of EOIR is to adjudicate immigration cases.  *Id*.  Under delegated

authority from the Attorney General, EOIR conducts immigration court proceedings, appellate reviews, and administrative hearings.

EOIR employs no political appointees. *Id.* ¶ 5. As an office within the Department of Justice, EOIR is headed by a Director who reports directly to the Deputy Attorney General. *See id.* The leadership is competitively hired into permanent Senior Executive Service positions as career civil servants. *Id.* EOIR's headquarters are in Falls Church, Virginia, about 10 miles from downtown Washington, D.C. *Id.* ¶ 6.

**II. Plaintiff's FOIA Requests**

This case concerned two of dozens of similar FOIA requests submitted by Plaintiffs Jason Leopold and Buzzfeed, Inc. to agencies throughout the Federal Government.[1] The two requests at issue in this case were submitted on January 11, 2021. Am. Compl. ECF No. 6-2 at 1-8. One was submitted to the Department of Justice Executive Office of Immigration Review ("EOIR") and the other was submitted to the Department of Justice Professional Responsibility Advisory Office ("PRAO"). *Id.*[2]

The requests were broad. Each FOIA request included five paragraphs. ECF No. 6-2 at 6. In paragraph one, the requests sought "[a]ll records . . . mentioning or referring to the protests in

---

[1]  *See, e.g.*, Compl., *Leopold v. U.S. Dep't of Justice*, No. 1:21-cv-00558, ECF No. 1 (D.D.C. Mar. 3, 2021) (addressing similar request to thirty-one agencies); Compl., *Leopold v. U.S. Dep't of Transp.*, No. 1:21-cv-00581, ECF No. 1 (D.D.C. Mar. 4, 2021) (addressing similar request to the FAA); Am. Compl., *Leopold v. U.S. Dep't of Homeland Security*, No. 1:21-cv-545, ECF No. 17 (D.D.C. Apr. 27, 2021) (addressing similar request to nine defendants in the Department of Homeland Security umbrella, including the Secret Service, the Transportation Security Administration, U.S. Customs and Border Protection, and the Federal Emergency Management Agency); Compl., *Leopold v. U.S. Dep't of Defense*, No. 1:21-cv-00577, ECF No. 1 (D.D.C. Mar. 4, 2021) (addressing similar request to the Department of Defense, National Guard Bureau, and U.S. Army); Compl, *Leopold v. U.S. Dep't of Interior*, No. 1:21-cv-00579, ECF No. 1 (D.D.C. Mar. 4, 2021) (addressing similar request to the Department of the Interior and the National Park Service).

[2] The requests were submitted in the same e-mail as identical FOIA requests submitted to dozens of other Department of Justice agencies. *See* ECF No. 6-2 at 1-8. But "[t]he parties agree that this case is limited to requests to two DOJ components: the Executive Office of Immigration Review ("EOIR") and the Professional Responsibility Advisory Office ("PRAO"). *See, e.g.* Joint Status Report, ECF No. 11 at 1 (June 17, 2021).

Washington, DC on January 6, 2021 by supporters of President Donald Trump . . ." *Id*.  Paragraph two of each FOIA request sought "[a]ll records . . . mentioning or referring to the January 6, 2021, speech by President Donald Trump at the Washington, DC protest and the subsequent insurrection and siege and STORM THE CAPITOL, that took place at the Capitol building in Washington, DC on that date." *Id*.  Paragraph three of each FOIA request sought "[p]hotographs of these January 6, 2021 protests and the siege/insurrection that took place[.]" *Id*.  Paragraph four of each FOIA request sought "[a]ll records mentioning or referring to tweets by Donald Trump that contain the words PROTESTS, RALLY, RALLIES, ELECTION FRAUD, FRAUD, JANUARY SIXTH." *Id*.  Finally, paragraph five of each request sough "[t]he call logs and briefing books for the directors of [EOIR and PRAO]." *Id*.

EOIR first responded by electronic mail on January 20, 2021, stating that Plaintiff Leopold's request for expedited treatment was denied. *Id*. at 9.  On February 17, 2021, EOIR issued Leopold a letter stating that a search had been conducted in response to the request. *Id*. at 12.  EOIR stated that no records were located responsive to paragraphs three to five of the request, but that it located records that may be responsive to paragraphs one and two. *Id*. at 13.  EOIR released one record to Plaintiff and withheld several records that consisted of individual e-mails within an e-mail string under FOIA Exemption 5.  Schaaf Decl. ¶¶ 10, 12. EOIR informed Leopold about mediation and appeal options.  ECF No. 6-2 at 13; Schaaf Decl. ¶ 10.

After receiving the letter, Leopold administratively appealed. *See* ECF No. 6-2 at 18.  The DOJ Office of Information Policy ("OIP") received the administrative appeal on February 20, 2021. *Id*.  Before OIP had a reasonable opportunity to address the administrative appeal, at the earliest opportunity, on April 6, 2021, Leopold initiated this action.  ECF No. 1.  Leopold made no effort to take advantage of available mediation options.

### III.   Procedural Background

On April 6, 2021, Plaintiffs initiated this action by filing a two-count complaint raising claims that components of the Department of Justice and the Department of Homeland Security violated the FOIA.  Compl., ECF No. 1 ¶¶ 35-44.  Specifically, Plaintiffs claimed that two DOJ

"components, the Executive Office of Immigration Review ("EOIR") and the Professional Responsibility Advisory Office ("PRAO") are at issue in this lawsuit" and that of many DHS components, "this lawsuit only concerns Plaintiffs' request to the Cybersecurity and Infrastructure Security Agency (CISA), Office of Intelligence and Analysis, and the Privacy Office." *Id.* ¶¶ 8, 24.

At the time that complaint was filed, Plaintiffs had already initiated another lawsuit in this district before the Honorable Timothy J. Kelly raising FOIA claims about the same FOIA request to CISA and the DHS components. *See* Compl., *Leopold v. U.S. Dep't of Homeland Security*, No. 1:21-cv-00545 (D.D.C. Mar. 2, 2021), ECF No. 1.[3] Accordingly, on April 27, 2021, Plaintiffs filed an Amended Complaint in this action, dropping the DHS components. Am. Compl., ECF No. 6. On May 26, 2021, Defendant answered the Amended Complaint. ECF No. 10.

Given that the suits were filed after EOIR and PRAO had issued a determination letter on the FOIA requests at issue, the parties agreed to confer to see if they could narrow the issues. Joint Status Report, ECF No. 12 (July 20, 2021). By August 19, 2021, Plaintiffs conceded that they were satisfied with PRAO's production. Joint Status Report, ECF No. 13 (Aug. 19, 2021). On that same date, Plaintiffs requested that EOIR provide them with a draft *Vaughn* index and search explanation. EOIR provided them these materials expeditiously, on August 26, 2021. *See* Joint Status Report, ECF No. 14 (Sept. 28, 2021).

Plaintiffs considered the draft *Vaughn* index and search explanation for several months before asking EOIR on October 28, 2021, if the agency would release the one record that EOIR withheld. By late 2021, EOIR agreed to issue a discretionary release of the withheld exemption 5 materials. *See* Joint Status Report, ECF No. 17 (Dec. 15, 2021). But Plaintiffs continued to press

---

[3] Instead of identifying CISA by its current name, the original complaint in Docket Number 1:21-cv-00545 identified CISA as the National Protection and Programs Directorate. Under the Cybersecurity and Infrastructure Security Agency Act of 2018, Congress redesignated the National Protection and Programs Directorate as CISA. Pub. L. 115-278. Accordingly, when Plaintiffs filed the original complaint in that case, CISA had been automatically substituted for the National Protection and Programs Directorate as a Defendant. *See* Fed. R. Civ. P. 25(d); *Air Line Pilots Ass'n, Int'l v. Civil Aeronautics Bd.*, 750 F.2d 81, 87 (D.C. Cir. 1984).

a claim for attorney fees against EOIR.  *See id*.  On December 1, 2021, Plaintiffs informed Defendant that they would compile a fee demand, *id*., which they provided to Defendant on January 10, 2022, Joint Status Report ECF No. 18 (Jan. 14, 2022).  In June 2022, the parties reported that they had reached an impasse on the fee issue.  Joint Status Report, ECF No. 24 (June 22, 2022).  On August 3, 2022, the parties stipulated to dismiss with prejudice all claims asserted against Defendant in this action except for Plaintiffs' claim to attorneys' fees, costs, and other litigation expenses in connection with Plaintiffs' FOIA request to EOIR.  ECF No. 26.  That same day, EOIR issued the discretionary release of the record at issue in this case to Plaintiffs.  Schaaf Decl. ¶ 18.

## IV.    The Record at Issue

The heart of this case involved an e-mail chain among EOIR leadership, including its Director, Deputy Director, Assistant Director of Administration, and Chief Management Officer. *See* Schaaf Decl. ¶ 12; Exhibit ("Ex.") A to Schaaf Decl.  At 3:16 PM on January 6, 2021, Assistant Attorney General Lee Lofthus sent an e-mail to all DOJ Component Heads informing them that Mayor Muriel Bowser had ordered a citywide curfew for the District of Columbia from 6 pm on Wednesday, January 6, until 6 am on Thursday, January 7, and that DOJ leadership had authorized immediate departure of all DOJ workforce in the District of Columbia except DOJ Emergency Personnel.  Schaaf Decl. Ex. A at 3-4.  Lofthus instructed component heads to inform onsite staff in Washington to depart work immediately.  *Id*. at 4.

Moments later, the EOIR Assistant Director e-mailed the EOIR Director indicating that she thought the e-mail should go both to Falls Church headquarters and Arlington immigration court staff and asking him if he would like to send it out.  *Id*. at 3.  EOIR Director James McHenry instructed the Assistant Director to draft something quickly, and at 3:32 pm, she responded with a draft.  *Id*. at 2-3.  In response, the Director proposed a few additional tweaks to the group on the email chain, which had grown since the initial e-mail.  *Id*. at 1-2.  The Director suggested that it should be sent with a "High importance Flag" within the next five minutes.  The draft indicated that leaving work as soon as possible is important because of Mayor Muriel Bowser's citywide

curfew and the potential that the crowd presence in downtown DC this afternoon could impact transportation routes. *Id.* The EOIR Director also confirmed that the message should be sent from the director's mailbox and another EOIR Assistant Director confirmed that the draft had been sent out in a finalized form. *Id.* at 1. These messages, except for some private information that was redacted under Exemption 6, are the materials that EOIR agreed to discretionarily release in late 2021 and ultimately discretionarily released on August 3, 2022. Schaaf Decl. ¶ 18; ECF No. 17.

## LEGAL STANDARD

FOIA's fee provision states that a "court may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any [FOIA] case . . . in which the complainant has substantially prevailed." 5 U.S.C. § 552(a)(4)(E)(i). This language "naturally divides the attorney-fee inquiry into two prongs"—"eligibility" and "entitlement." *Brayton v. Office of the U.S. Trade Representative*, 641 F.3d 521, 524 (D.C. Cir. 2011) (citation omitted). "The eligibility prong asks whether a plaintiff has 'substantially prevailed' and thus 'may' receive fees." *Id.* (citation omitted). "If so, the court proceeds to the entitlement prong and considers a variety of factors to determine whether the plaintiff *should* receive fees." *Id.* (emphasis in original).

In regard to the entitlement analysis, the D.C. Circuit has recognized that FOIA's attorney fee provision "was not enacted to provide a reward for any litigant who successfully forces the government to disclose information it wished to withhold." *Davy v. C.I.A.*, 550 F.3d 1155, 1158 (D.C. Cir. 2008) (citation omitted). Instead, the provision has "a more limited purpose—to remove the incentive for administrative resistance to disclosure requests" when such resistance is based solely on the knowledge "that many FOIA plaintiffs do not have the financial resources or economic incentives to pursue their requests through expensive litigation." *Id.* (citation omitted). Ultimately, the decision on whether a plaintiff is entitled to attorneys' fees "rests in the sound discretion of the district court." *Church of Scientology of Cal. v. Harris*, 653 F.2d 584, 590 (D.C. Cir. 1981); *see, e.g., Cuneo v. Rumsfeld*, 553 F.2d 1360, 1365 (D.C. Cir. 1977); *Nationwide Bldg. Maint., Inc. v. Sampson*, 559 F.2d 704, 714 (D.C. Cir. 1977).

To determine whether a FOIA plaintiff who is eligible for a fee award is also entitled to a fee award, courts assess four factors: "(1) the public benefit derived from the case, (2) the commercial benefit to the requester, (3) the nature of the requester's interest in the information, and (4) the reasonableness of the agency's conduct." *Morley v. C.I.A.*, 719 F.3d 689, 690 (D.C. Cir. 2013). The applicant bears the burden of proof on each issue. *See Covington v. District of Columbia*, 57 F.3d 1101, 1107 (D.C. Cir. 1995).

If a Court finds that a plaintiff is eligible for, and entitled to, attorneys' fees, it must determine a reasonable amount of fees. An appropriate starting point is typically the lodestar, a reasonable number of hours multiplied by a reasonable hourly rate. *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). However, as a decision to award fees is discretionary, a court "may deny in its entirety a request for an outrageously unreasonable amount, lest claimants feel free to make unreasonable demands, knowing that the only unfavorable consequence of such misconduct would be reduction of their fee to what they should have asked for in the first place." *Env't. Def. Fund, Inc. v. Reilly*, 1 F.3d 1254, 1258 (D.C. Cir. 1993) (citation and internal punctuation omitted). If overbilling is less egregious but still unreasonable, the Court "may impose a lesser sanction, such as awarding fee below what a 'reasonable' fee would have been in order to discourage fee petitioners from submitting an excessive request." *Id*. (citation omitted).

## ARGUMENT

The Court should deny the pending motion for fees, as Jason Leopold and Buzzfeed Inc. are neither eligible for nor entitled to attorneys' fees in this matter. The case concluded without any summary judgment or other substantive briefing and Plaintiffs received no judicial relief in this matter. Nor have Plaintiffs successfully demonstrated that their lawsuit was a catalyst for EOIR's discretionary release of the document responsive to the FOIA request. Accordingly, Plaintiffs are not eligible for attorneys' fees. And even if Plaintiffs met the eligibility threshold, they are not entitled to fees in this case. Unsurprisingly, Plaintiffs achieved no public benefit through the FOIA request to EOIR, as the only document at issue demonstrates. The request was seeking records related to the insurrection that occurred on January 6, 2021, but was submitted to

8

the agency responsible for administering immigration courts. Taxpayers should not subsidize a FOIA request like the one at issue in this case, particularly after EOIR reasonably responded to the request in advance of the lawsuit and had, at a minimum, a colorable basis for initially withholding the e-mails.

Alternatively, if the Court finds that Plaintiffs clear both the eligibility and entitlement hurdles, it should award fees in an amount substantially less than demanded by Plaintiffs. It is not reasonable for Plaintiffs to expend many times the few hours they spent on the merits of this case litigating fees, let alone have EOIR pay for that time as well. Accordingly, the Court should not order EOIR to pay for the amount Plaintiffs seek to pay their attorneys for the time spent on the pending motion.

**I.     Plaintiffs Have Not Demonstrated That They Are Eligible for Fees under the FOIA Because They Have Not Shown That a Lawsuit Was Necessary for Attaining the Requested E-Mails.**

To establish eligibility, a plaintiff must show that it has "substantially prevailed" by obtaining either (1) "a judicial order, or an enforceable written agreement or consent decree" or (2) "a voluntary or unilateral change in position by the agency, if the complainant's claim is not insubstantial." 5 U.S.C. § 552(a)(4)(E)(ii). The second of these two options "essentially codifies the so-called 'catalyst theory'" of recovery, under which a plaintiff is eligible for fees if the "litigation substantially caused the requested records to be released." *N.Y.C. Apparel F.Z.E. v. U.S. Customs and Border Prot. Bureau*, 563 F. Supp. 2d 217, 221 (D.D.C. 2008) (citation omitted).

Here, Plaintiffs concede that they have not substantially prevailed under 5 U.S.C. § 552(a)(4)(E)(ii)(1). Rather, they argue that they are eligible only under the catalyst theory. Pls. Fee & Cost Petition, ECF No. 27 at 4-5. But they fail to make the necessary showing.

Demonstrating eligibility under the catalyst theory requires the Plaintiffs to show that their "lawsuit was *necessary* for [their] attainment of the requested documents." *See Citizens for Responsibility and Ethics in Washington ("CREW") v. U.S. Dep't of Justice*, 83 F. Supp. 3d 297, 304 (D.D.C. 2015) (emphasis in original). "[T]he catalyst analysis is all about causation, and it is [Plaintiffs'] burden to show that the necessary causal nexus exists." *Conservation Force v. Jewell*,

160 F. Supp. 3d 194, 205 (D.D.C. 2016).  Of course, "the mere filing of the complaint and the subsequent release of the documents is insufficient to establish causation." *Weisberg v. U.S. Dep't of Justice*, 745 F.2d 1476, 1496 (D.C. Cir. 1984).

The catalyst theory is analyzed in many cases where the agency had failed to commence or to complete processing a FOIA request before the litigation commenced.  In those cases, the court considers factors such as "whether the agency made a good faith effort to discover and disclose material, whether the scope of the request caused a delay in disclosure, and whether the agency was burdened by other duties that delayed its response."  *See, e.g., All. for Responsible CFC Policy, Inc. v. Costle,* 631 F. Supp. 1469, 1470 (D.D.C. 1986).

In this case, however, EOIR completed processing of Plaintiffs' FOIA request *prior* to the suit being commenced.  Plaintiffs point to nothing beyond EOIR's mere discretionary release of one set of e-mails as evidence that this "lawsuit was *necessary* for [their] attainment of the requested documents."  *See CREW*, 83 F. Supp. 3d at 304 (emphasis in original); *see also* ECF No. 27 at 4-5.  But if every discretionary disclosure after the filing of a complaint were sufficient to establish eligibility for fees under the catalyst theory, federal agencies would have no incentive to voluntarily disclose records.  "[A]warding fees to plaintiffs in [Buzzfeed, Inc. and Leopold's] situation might prod government agencies to be less rather than more transparent." *Brayton,* 641 F.3d at 528.  "[U]nder [Plaintiffs'] approach, . . . agencies with legal authority to withhold requested documents . . . might hesitate to release the documents, since doing so would risk creating a 'substantially prevail[ing]' plaintiff who might be entitled to fees." *Id*.  Here, moreover, Plaintiffs have provided no additional evidence to suggest that "the institution and prosecution of the litigation cause[d] the agency to release the documents obtained during the pendency of the litigation" via voluntary disclosure.  *Church of Scientology*, 653 F.2d at 587.

Agencies have broad discretion to make "discretionary disclosures" of exempt information, as a matter of administrative discretion, where they are not otherwise prohibited by law from doing so.  *See Chrysler Corp. v. Brown*, 441 U.S. 281, 293 (1979) (reasoning that application of agency FOIA policies may require "some balancing and accommodation" and noting that "Congress did

not design the FOIA exemptions to be mandatory bars to disclosure"); *see also Bartholdi Cable Co. v. FCC*, 114 F.3d 274, 282 (D.C. Cir. 1997) (observing that "FOIA's exemptions simply permit, but do not require, an agency to withhold exempted information from the public").  And they are authorized to discretionarily release documents even in the absence of litigation.  Among other avenues, the National Archives offers FOIA dispute resolution services to resolve disputes between FOIA requesters and Federal agencies.  *See* https://www.archives.gov/ogis/mediation-program (last visited Sept. 14, 2022); Schaaf Decl. ¶¶ 16-17.

The record indicates that the EOIR FOIA processers did not err in initially identifying the email chain as exempt from disclosure under Exemption 5.  *See infra* at 20-22.  But that initial determination did not foreclose Plaintiffs from requesting that the agency nonetheless consider a discretionary release of the material instead of filing a lawsuit at the earliest possible opportunity.  Plaintiffs made no effort to make such a request. Had they done so, the record indicates that they could have obtained the very same discretionary release they obtained after filing suit without the need for a lawsuit at all.  *See* Schaaf Decl. ¶¶ 16-17.  To be sure, EOIR agreed to a discretionary release as part of a settlement that also required Plaintiffs to dismiss this action.  But Plaintiffs do not explain why EOIR would not have been willing to negotiate a similar agreement before the institution and prosecution of this litigation.

In sum, while it is true that EOIR's discretionary release of one set of e-mails occurred after Plaintiffs filed the complaint, "it is also clear beyond cavil that the catalyst method requires more.  No averments or other facts in the instant record indicate that [EOIR] only produced [the e-mails] *because* of [the] lawsuit or its necessary consequences." *Conservation Force*, 160 F. Sup. 3d at 206.  Plaintiffs have not demonstrated that they are eligible for fees under the catalyst theory.[4]

---

[4] Plaintiffs' brief refers to "court-ordered discussions[.]"  ECF No. 27 at 4.  But they cite no docket entry where this Court ordered the parties to discuss a discretionary release.  EOIR discretionarily released the e-mail chain that Plaintiffs wanted without any Court order on the subject and Plaintiffs have not shown that EOIR would not have done so in the absence of this lawsuit.  *See* Schaaf Decl. ¶¶ 16-17.

II.   **Plaintiffs Have Not Demonstrated that Any of the Entitlement Factors Weigh in Favor of a Fee Award.**

To receive a fee award, Plaintiffs would not only have to show eligibility for attorneys' fees, but they would also have to satisfy the criteria for entitlement to fees. To assess a plaintiff's entitlement, courts in the circuit evaluate "(1) the public benefit derived from the case, (2) the commercial benefit to the requester, (3) the nature of the requester's interest in the information, and (4) the reasonableness of the agency's conduct." *Morley*, 719 F.3d at 690. "The sifting of those criteria over the facts of a case is a matter of district court discretion." *STS Energy Partners LP v. FERC*, 214 F. Supp. 3d 66, 68-69 (D.D.C. 2016) (quoting *Tax Analysts v. U.S. Dep't of Justice*, 965 F.2d 1092, 1094 (D.C. Cir. 1992)).

Typically, "entitlement is determined under a balancing of [these] four factors." *Dorsen v. U.S. Securities and Exchange* Comm'n, 15 F. Supp. 3d 112, 120 (D.D.C. 2014). However, "in some circumstances[,] the final factor may be dispositive. Specifically, the D.C. Circuit has made clear that 'if the Government's position is correct as a matter of law, that will be dispositive. If the Government position is founded on a colorable basis in law, that will be weighed along with the other relevant considerations in the entitlement calculus." *Id*. at 121 (citing *Davy*, 550 F.3d at 1162); *see also Chesapeake Bay Found. Inc. v. U.S. Dep't of Agric.*, 11 F.3d 211, 216 (D.C. Cir. 1993)). This principle is consistent with the D.C. Circuit's "'long-established rule of never granting a fee award to a plaintiff whose FOIA claim was incorrect as a matter of law.'" *Dorsen*, 15 F. Supp. 3d at 121 (quoting *Brayton*, 641 F.3d at 526). Here, EOIR's initial withholding decision was not incorrect as a matter of law. But even if it was, none of the four factors favors a fee award under the circumstances of this case.

A.     **The First Factor Does Not Weigh in Favor of a Fee Award Given the Lack of Any Public Benefit in Submitting this Request to an Agency that Administers Immigration Courts.**

Evaluating the public benefit factor "requires consideration of both the effect of the litigation for which fees are requested and the potential public value of the information sought." *Davy*, 550 F.3d at 1159; *see also McKinley v. Fed. Housing Finance Agency*, 739 F.3d 707, 711 (D.C. Cir. 2014) ("The first factor considers the significance of the contribution that the released information makes to the fund of public knowledge."). It "speaks for an award of attorney's fees where the complainant's victory is likely to add to the fund of information that citizens may use in making vital political choices." *Cotton v. Heyman*, 63 F.3d 1115, 1120 (D.C. Cir. 1995) (quoting *Fenster v. Brown*, 617 F.2d 740, 744 (D.C. Cir. 1979)). Plaintiffs must show a good "*ex ante* reason . . . to believe that" their request to EOIR had a decent chance of yielding a public benefit. *See Morley v. CIA*, 245 F. Supp. 3d 74, 77 (D.D.C. 2017). An "inherently speculative observation" about a request's theoretically conceivable results do not satisfy the public interest criterion of the fee entitlement analysis. *See Cotton*, 63 F.3d at 1120.

Here, Plaintiffs have not shown anything more than inherent speculation that EOIR might have had records relating to the events of January 6, 2021, that would yield a public benefit. The only contention in Plaintiffs' fee memorandum on this subject is that "[i]t is beyond any reasonable dispute, especially in light of the extensive hearings of the House January 6 Committee, and the events of January 6 and claims of election fraud by the President, and the role of the Justice Department regarding these issues, are a matter of public concern and potentially relevant to vital political choices, and Plaintiffs have established at least a modest probability that the request would result in the release of new information about these issues." ECF No. 27 at 5. But the particular FOIA request at issue in this case was not processed by the Department of Justice as a whole nor by any law-enforcement Justice Department agency like the Federal Bureau of Investigation.[5] Surely a FOIA requester does not satisfy the public benefit prong by requesting information from

---

[5] Again, Plaintiffs have other lawsuits and FOIA requests pending. *See, e.g.*, Compl., *Leopold v. U.S. Dep't of Justice*, No. 1:21-cv-00558, ECF No. 1 (D.D.C. Mar. 3, 2021).

an agency that has nothing to do with the subject matter of the request. Plaintiffs do not show why there is even a modest probability that EOIR—which is made up of immigration courts adjudicating immigration cases, has no political appointees on staff, has no law enforcement powers, and has no office within the boundaries of Washington, D.C., *see* Schaaf Decl. ¶¶ 4-6— would have information such as that relating to "election fraud by the President," ECF No. 27 at 5. They have made it "difficult for the Court [to] identify what the reasons were to believe that the search [of EOIR records] would turn up something useful." *See Morley*, 245 F. Supp. 3d at 77.

Moreover, the mechanical nature in which Plaintiffs submitted an identical FOIA request to dozens of agencies across the Federal Government casts doubt on whether there was any particular "reason . . . to believe there was a [specific] connection between" EOIR and the records sought. *See id.* Plaintiffs made no effort to target their requests to the particular agencies or agency components that plausibly had a "decent chance of turning up" publicly beneficial results. *See id.* And their fee petition in this case, correspondingly, does not meaningfully explain why EOIR is an agency that is likely to have documents relating to the events that occurred on January 6, 2021. EOIR's possession of publicly beneficial records related to the events of January 6, 2021, was about as likely as EOIR's possession of records related to the Kennedy assassination. *See id.* at 77.

In Jason Leopold's declaration, he admits that EOIR has "no immediate connection to election fraud." Leopold Decl. ¶ 9. He nonetheless argues that he was not seeking a needle in a haystack because he "learned that" one individual (who Leopold incorrectly identifies as being the Assistant Attorney General of the Environment and Natural Resources Division at the time Leopold filed his FOIA request to EOIR) was "supporting President Trump's efforts to cast doubt on the integrity of the 2020 election." *Id.* ¶ 6. But Leopold's identification of Clark does not show that his request to EOIR is premised on anything more than speculation. He notes that he "learned that numerous DOJ officials threatened to resign if Trump named Clark as Acting Attorney General." *Id.* But he fails to identify who they are or indicate if any were connected to EOIR.

Again, EOIR employs no political appointees like Clark.  *See* Schaaf Decl. ¶ 5.

Leopold also tries to manufacture a connection between EOIR and the records purportedly sought in his request by noting that, "President Trump had made claims that large numbers of illegal immigrants had fraudulently cast votes [in] the 2016 election" as a basis for the contention that "one or more EOIR officials were involved in efforts to challenge or undermine the 2020 election through immigration-related claims."  Leopold Decl. ¶ 10.  Putting aside some obvious gaps in the logical causal chain, it appears premised on a misunderstanding of the role of EOIR, which has no law-enforcement function.  *See* Schaaf Decl. ¶ 4.  Leopold needed only to consult EOIR's website before filing a baseless FOIA request for materials that had little objective likelihood of existing given that EOIR merely administers immigration courts. https://www.justice.gov/eoir/about-office.  EOIR does not bring civil or criminal claims and it does not adjudicate criminal claims.  *See id*.  In context, Leopold's request was "like searching for a needle in a haystack[.]" *Morely*, 245 F. Supp. 3d at 77.

The "disjointed explanation[] in this case" also indicates that the "public benefit here was small."  *Morley v. CIA*, 894 F. 3d 389, 392 (D.C. Cir. 2018).  Importantly, Leopold's latest litigation positions that (1) "election fraud" was the subject of his request, that (2) his request was geared at ascertaining who might be "considered or selected to fill important vacancies at DOJ in the event DOJ officials quit as they threatened to do if Clark was named Acting Attorney General" and that (3) his request had something to do with "immigration-related claims," Leopold Decl. ¶¶ 9-10, are hard to square with the actual request that he submitted to EOIR (and countless other federal agencies inside and outside of DOJ) on January 11, 2021, ECF No. 6-2 at 6.  Again, that request sought "[a]ll records . . . mentioning or referring to the protests in Washington, DC on January 6, 2021" and "[a]ll records . . . mentioning or referring to the January 6, 2021 speech by President Donald J. Trump."  *Id*.[6]  Even if the items referenced in Leopold's declaration might

---

[6] Paragraph four sought "[a]ll records mentioning or referring to tweets by Donald Trump that contain" a list of different words including election fraud and fraud.  ECF No. 6-2 at 6.  But EOIR told Leopold that it had no responsive records to paragraphs three to five of the request

provide good reasons to believe that a different request to EOIR might turn up something useful (which they do not), the request at issue here is hardly a "targeted query with [a] 'decent chance' of turning up 'useful new information' about" those particular items. *See Morley*, 245 F. Supp. 3d at 77. To the contrary, one court in this district has described the request as seeking a "broad array of records relating to the January 6 attack." *Leopold v. U.S. Dep't of Justice*, No. 21-cv-0558, 2021 WL 2073352, at \*1 (D.D.C. May 24, 2021) (addressing the same request but to other DOJ agencies). By focusing on only a narrow slice of materials that are—at most—arguably within the scope of Leopold's excessively broad request,[7] he effectively concedes that there was no good "reason[] . . . to believe that the search" for nearly all of the remaining materials within the scope of the request that he forced EOIR to process "would turn up something useful." *See Morley*, 245 F. Supp. 3d at 77. If Leopold had submitted a targeted request for materials referenced his declaration, the e-mail chain that was at issue in this lawsuit that forms the basis of Plaintiffs' argument that they are eligible for fees would not have been at issue at all. It would make little sense for this Court to award fees in this context.

Indeed, the single record that Plaintiffs received vindicates Defendant's view that Plaintiffs submitted "quite [an] implausible request" given the nature of EOIR's mission. *See Morley v. CIA*, 810 F.3d 841, 844 (D.C. Cir. 2016). The e-mails among EOIR personnel crafting an e-mail to EOIR employees in Falls Church and Arlington, Virginia, authorizing them to leave work early given Mayor Bowser's citywide curfew is no different than internal deliberations that any employer in the Washington, D.C. area would have had on January 6, 2021. Unsurprisingly, Plaintiffs do not explain how it "add[s] to the fund of information that citizens may use in making vital political choices" in any way. *See Cotton*, 63 F.3d at 1120. "[T]he expectation-adjusted

---

before Leopold filed this suit and the adequacy of EOIR's search was never at issue in this case. ECF No. 6-2 at 13.

[7] It is far from clear that information about who might be "considered or selected to fill important vacancies at DOJ in the event DOJ officials quit as they threatened to do if Clark was named Acting Attorney General," Leopold Decl. ¶ 9, would even be responsive to the request that Plaintiffs submitted, ECF No. 6-2 at 6.

value of the public benefit that plaintiff[s] sought to provide" in this suit against EOIR "was small." *See Morley*, 245 F. Supp. 3d at 77.

### B.   The Second and Third Factors Do Not Weigh in Favor of a Fee Award Because Taxpayers Should Not Bear the Cost of a FOIA Request of Little Public Benefit, Like the One at Issue Here.

Plaintiffs have not shown that the second and third entitlement factors weigh in favor of a fee award.  "In analyzing a motion for attorney's fees, the commercial benefit to the complainant and the nature of the complainant's interest in the records sought are factors that 'are closely related and often considered together.'" *Elec. Priv. Info. Ctr. v. U.S. Dep't of Homeland Security* ("EPIC I") 811 F. Supp. 2d 216, 235 (D.D.C. 2011) (quoting *Tax Analysts*, 965 F.2d at 1095).  Plaintiffs devote little more than a paragraph to these two factors and summarily assert these factors weigh in favor of a fee award because they are "members of the [news] media." ECF No. 27 at 6.  But Plaintiffs' status as members of the media is not dispositive.

"Organizations that serve the public interest, like news organizations, are not *ipso facto* entitled to have the second and third factors weighed in their favor[.]" *Assassination Archives and Rsch. Ctr., Inc. v. CIA*, No. 1:17-cv-00160, 2019 WL 1491982, at *4 (D.D.C. Apr. 4, 2019) (McFadden, J.) *aff'd* 2019 WL 4565818 (D.C. Cir. Sep 06, 2019).  "In fact, 'Congress left to the discretion of district courts the judgment on whether to award attorney's fees even to news organizations, leaving open the possibility that in some circumstances news organizations might not be entitled to fees.'"  *Id*. (quoting *Tax Analysts*, 965 F.2d at 1096).  The Court must "look[] beyond" Plaintiffs' status as members of the news media "to determine whether the second and third factors should weigh toward awarding fees." *Id*.; *see also Fenster*, 617 F.2d at 743 n.4 (The directive to treat news organizations favorably is not intended to be "too delimiting[;]" it is part of criteria "intended to provide guidance and direction not airtight standards for courts to use in determining awards of fees.") (citation omitted).  Several factors support the conclusion that "*this* news organization should not receive attorney's fees" in this case. *See Tax Analysts*, 965 F.2d at 1069.

First, this Court has suggested that it should consider whether taxpayers should "'provide

an exogenous incentive for a request' like this one" where there is little or no "expectation-adjusted public benefit" in analyzing the second and third factors. *Assassination Archives and Rsch. Ctr.*, 2019 WL 1491982, at *4 (quoting *Morley*, 245 F. Supp. 3d at 78), *see supra*, at 13-17. "[T]he question at issue in the second and third factors is whether attorney's fees were necessary and appropriate to incentivize [Buzzfeed] to produce this level of public benefit." *Morley*, 245 F. Supp. 3d at 77-78. Jason Leopold and Buzzfeed, Inc. have submitted the same sweeping and uncircumscribed FOIA request for records related to the events of January 6, 2021, to seemingly every federal agency that they can identify regardless of whether the agency's mission bears any real or substantial relationship to the subject matter. *See supra* note 1. Taxpayers should not subsidize Plaintiffs' interest in avoiding the minimal expenditure of resources that would be needed to draft more targeted FOIA requests against a smaller number of agencies that would be considerably more likely to result in valuable information and less unnecessary litigation.

Indeed, as this Court has explained, "almost a quarter of th[is] district's entire civil docket" is comprised of FOIA cases and FOIA plaintiffs like Jason Leopold and Buzzfeed, Inc. "create much of that backlog." *Am. Ctr. for L. and Just. v. U.S. Dep't of Homeland Security*, 573 F. Supp. 3d 78, 83 (D.D.C. 2021). Jason Leopold self-identifies as the "FOIA Terrorist," *see* https://twitter.com/JasonLeopold (bio) (Sept. 19, 2022), and one report calls him "the most active individual FOIA litigator in the United States today," https://foiaproject.org/2021/01/13/foialitigators2020/. According to the report, Leopold is second only to the New York Times in total cases filed by media plaintiffs between 2001 and 2020, even though he only started filing cases in 2012. *Id*.

To be sure, "Congress wanted news organizations to be treated favorably under the attorney's fee provisions." *Tax Analysts*, 965 F.2d at 1096. News organizations and journalists "often aim to ferret out and make public worthwhile, previously unknown government information—precisely the activity that FOIA's fees provision seeks to promote." *Davy*, 550 F.3d at 1160. But those important principles are undermined if the district court acts as a rubber-stamp for taxpayer financing of litigation related to sweeping FOIA requests to agencies having a purely

speculative connection with the subject matter at issue just because the Plaintiffs say they are a news organization.  Plaintiffs' request to EOIR was always unlikely to accomplish much more than additional delay for other public-interest oriented requesters who submit reasonable and targeted requests for information—like data about immigration court decisions—that is much more likely to exist in EOIR's files.

Second, Plaintiffs' failure to show how they ultimately used the record sought indicates that the third factor does not weigh in their favor.  Plaintiffs continued to press this litigation for the e-mails that EOIR discretionarily released after the agency's draft *Vaughn* index summarized their contents.  Plaintiffs' memorandum indicates that they did so "in furtherance of their reporting."  ECF No. 27 at 6.  But Plaintiffs do not provide a single example of how the information demanded was used.  And EOIR cannot fathom what is newsworthy about the those e-mails.

Third, Plaintiffs' conduct throughout this litigation raises significant questions about the strength of Plaintiffs' "interest in the records[.]"  *See Tax Analysts*, 965 F.2d at 1093.  The parties reached an agreement in principle at the end of 2021 that would include EOIR discretionarily releasing the initially withheld document to Plaintiffs.  *See* ECF No. 17.  But Plaintiffs insisted on obtaining a check from EOIR to cover their attorneys' fees, which led to lengthy negotiations on that subject.  *See* ECF Nos. 17-24.  It took Plaintiffs and their counsel until July 2022 to realize that they "mistakenly believed that the record in question had already been produced, but Defendant was awaiting execution of a draft written agreement that Defendant had previously provided to Plaintiffs' counsel."  ECF No. 25 at 1.  If Plaintiffs' interest in this litigation was a strong interest in the e-mails they demanded, one would have expected them to have executed that agreement, ended the merits portion of the litigation, and secured the record at the earliest opportunity.  Indeed, they could have attempted to seek the very same agreement from EOIR much earlier without suing EOIR at all.  *See* Schaaf Decl. ¶¶ 16-17.

Finally, it is "not prohibited by FOIA" for this Court to conclude that "the news organization before it [is] not entitled to attorney's fees because it d[oes] not need the attorney's fees incentive[.]"  *Tax Analysts*, 965 F.3d at 1096.  Buzzfeed Inc. is a for-profit organization

reporting that it delivers significant profitability to its investors from its advertising, content, commerce, and other revenue.   *See* Buzzfeed Inc. Investor Presentation, August 2022, https://investors.buzzfeed.com/static-files/740e1de3-921f-4e48-9f51-61bc177fa38f.   Plaintiffs have made no effort to meet their burden of showing how "the private self-interest motive of" and "pecuniary benefit to, the complainant will be [in]sufficient to insure the vindication of the rights given in the FOIA."   *Tax Analysts*, 965 F.2d at 1096 (quoting *Fenster*, 617 F.2d at 743).   In sum, Plaintiffs have not shown that the second and third factors weigh in favor of a fee award in this case.

### C.     The Fourth Factor Weighs Against a Fee Award Because EOIR's Conduct was Reasonable.

The fourth factor considers "the reasonableness of the agency's conduct."   *Morley*, 719 F.3d at 690.   It "asks not whether 'the agency acted correctly' but 'whether the agency has shown that it had any colorable or reasonable basis for not disclosing the relevant material.'" *Assassination Archives and Rsch. Ctr.*, 2019 WL 1491982, at *4 (quoting *Morley*, 894 F.3d at 394).   "It also considers whether the agency was 'recalcitrant in its opposition to a valid claim or otherwise engaged in obdurate behavior.'"   *Id*. (quoting *Davy*, 550 F.3d at 1162).   Both considerations weigh decisively in EOIR's favor.

#### 1.   EOIR had a Colorable Basis for its Initial Decision Not to Disclose the E-Mails Under Exemption 5 Based on the Deliberative Process Privilege.

Assuming it is proper for the Court to analyze EOIR's initial decision to withhold the set of e-mails even though it released this material to Plaintiffs, there is little doubt that, at a minimum, withholding had "a colorable basis in law" under Exemption 5.   *See Dorsen*, 15 F. Supp. 3d at 125. Exemption 5 shields "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. §552(b)(5). It thus protects records that are subject to the "deliberative process privilege, which protects from disclosure documents generated during an agency's deliberations about a policy, as opposed to documents that embody or explain a policy that the agency adopts."   *U.S. Fish & Wildlife Serv. v. Sierra Club, Inc.*, 141 S. Ct. 777, 783 (2021).   It "protect[s] agencies from being 'forced to operate

in a fishbowl[.]" *Id*. at 785 (quoting *EPA v. Mink*, 410 U.S. 73, 87 (1973)).  And "is rooted in 'the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news.'"  *Id*. (quoting *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8-9 (2001)).

The privilege "distinguishes between predecisional, deliberative documents, which are exempt from disclosure, and documents reflecting a final agency decision and the reasons supporting it, which are not." *Id*. at 785-86.  "Documents are 'predecisional if they were generated before the agency's final decision on the matter, and they are 'deliberative' if they were prepared to help the agency formulate its position." *Id*. at 786.  "There is considerable overlap between these two prongs because a document cannot be deliberative unless it is predecisional." *Id*.

The e-mails at issue here fit squarely within exemption five.  In the e-mails, EOIR officials deliberated about and circulated drafts of a proposed e-mail statement to EOIR personnel authorizing them to leave the office immediately given the citywide curfew in place on January 6, 2021.  Schaaf Decl. ¶¶ 12-14 & Ex. A.  The e-mails are predecisional because they preceded the agency's decision about how to inform EOIR personnel about their authority to leave work early on January 6, 2021.  The e-mail chain is deliberative because it reflects EOIR's discussions and recommendations, as well as its drafts of the statement that was ultimately provided to EOIR personnel.  *See Krikorian v. Dep't of State*, 984 F.2d 461, 466 (D.C. Cir. 1993); *see also In re Apollo Grp., Inc. Sec. Litig.*, 251 F.R.D. 12, 31 (D.D.C. 2008) ("[B]y their very nature," draft documents "are typically predecisional and deliberative, because they reflect only the tentative view of their authors; views that might be altered or rejected upon further deliberation either by their authors or by superiors.") (citation omitted), *aff'd on other grounds and remanded by*, 329 F. App'x 283 (D.C. Cir. 2009); *People for the Am. Way Found. v. Nat'l Park Serv.*, 503 F. Supp. 2d 284, 303 (D.D.C. 2007) ("[D]rafts are commonly found exempt under the deliberative process privilege.").  And "[t]he overwhelming consensus among judges in this District is that the [deliberative process] privilege protects agency deliberations about public statements[.]" *Leopold v. Office of Director of Nat'l Intelligence*, 442 F. Supp. 3d 266, 276 (D.D.C. Feb. 18, 2020)

(quoting *Am. Ctr. for L. & Just. v. U.S. Dep't of Justice*, 325 F. Supp. 3d 162, 171-72 (D.D.C. 2018)). The same reasoning applies, perhaps with greater force, to agency deliberations about management's statements to internal personnel. *See id.*

Plaintiffs do not appear to dispute that the records here were predecisional and deliberative. ECF No. 27 at 6-7. Instead, they focus solely on the FOIA provision requiring that the agency "reasonably foresee that disclosure would harm an interest protected by an exemption," 5 U.S.C. § 552(a)(8)(A)(i)(I). ECF No. 27 at 6-7. But "the fact that the [agency] exercised its discretion to release requested records does not demonstrate" that the initial basis for withholding information was unreasonable. *See Dorsen*, 15 F. Supp. 3d at 124. "Instead, the rule applied in this Circuit avoids penalizing agencies that 'choose to relent for the sake of transparency and release requested documents without exposing themselves to monetary penalties[.]'" *Id.* (quoting *Brayton*, 641 F.3d at 528).

In any event, EOIR's initial withholding was not only colorable, but entirely justified. The agency satisfies the reasonably foreseeable harm criterion despite its decision to relent and release for the sake of transparency. The deliberative process privilege protects "candid consideration of alternatives within an agency, and, thereby, improves the quality of agency policy decisions." *Jordan v. U.S. Dep't of Justice*, 591 F.2d 753, 772 (D.C. Cir. 1978). As shown by the Schaaf declaration, EOIR's initial determination that release of these internal discussions would impair similar decision-making processes was entirely reasonable. Schaaf Decl. ¶¶ 15; *Machado Amadis v. U.S. Dep't of State*, 971 F.3d 364, 371 (D.C. Cir. 2020).

   2.  EOIR Was Neither Recalcitrant in its Opposition to a Valid Claim Nor Otherwise Engaged in Obdurate Behavior.

Whether or not EOIR's initial decision to withhold the record at issue in this case had a colorable basis in law, the fourth factor "is intended to weed out those cases in which the government was recalcitrant in its opposition to a valid claim or otherwise engaged in obdurate behavior." *Tax Analysts*, 965 F.2d at 1096 (quoting *Cuneo*, 553 F.2d at 1366). When there is no evidence of this behavior, and no evidence that the government needlessly prolonged this

litigation, the fourth factor weighs heavily against awarding fees.

Plaintiffs have not contended that EOIR's search was inadequate. And Defendant's conduct evidences a timely and concerted effort to process the request as quickly as possible. EOIR began processing Plaintiffs' FOIA request expeditiously after it was logged on January 14, 2021, and—despite the "broad array of records relating to the January 6 attack" sought in the complex request, *see Leopold,* 2021 WL 2073352, at *1 (addressing the same request but to other DOJ components)—completed processing it about one month later. *See* Schaaf Decl. ¶ 10. On February 17, 2021, EOIR issued a response to the requester releasing one record and initially withholding another. *Id.* That is faster than the average time that this Court has found agencies typically take to process complex requests. *See Am. Ctr. for L. and Just.*, 573 F. Supp. 3d at 82. Unlike most FOIA litigation, the agency completed processing the request before Plaintiffs brought this suit. *See id.*; *see also Morley*, 894 F.3d at 393.

Moreover, the agency's decision to agree to a discretionary release of the one agency record that it withheld about a month after Plaintiffs requested the discretionary release—in the face of its own view that releasing it would cause foreseeable harm to the ability of its personnel to engage in candid deliberations—is the opposite of recalcitrance in opposition to any claim, valid or invalid. EOIR's conduct in releasing the withheld record is precisely the type of behavior that is consistent with the purposes of the FOIA. In sum, EOIR had a colorable basis in law for its initial withholding decision and was far from recalcitrant in response to Plaintiffs' claims.

**III.     In the Alternative, if the Court Concludes that Plaintiffs are Eligible and Entitled to Fees, it Should Award a Significantly Reduced Amount.**

Plaintiffs in this case are neither eligible for nor entitled to a fee award.  Were the Court to find otherwise, however, "district courts retain the discretion to modify a fee award based on the reasonableness of the request and the particular facts of the case."  *Conservation Force*, 160 F. Supp. 3d at 203.  "Thus, once a plaintiff successfully surmounts the eligibility hurdle, the fee inquiry becomes highly case specific."  *Id*.  *See Judicial Watch, Inc. v. U.S. Dep't of Justice*, 878 F. Supp. 2d 225, 239 (D.D.C. 2012) (examining whether the fees that were incurred were reasonable after determining plaintiff demonstrated eligibility and entitlement).  Courts typically consider whether the billing rates are reasonable and whether the hours expended on various matters in the case are reasonable.  *See, e.g., Bd. of Trs. Of Hotel & Rest. Emps. Local 25 v. JPR, Inc.*, 136 F.3d 794, 801 (D.C. Cir. 1998).  "The party seeking fees has the . . . burden of establishing the reasonableness of the fees requested."  *Elec. Priv. Info. Ctr. v. U.S. Dep't of Homeland Sec. II ("EPIC II")*, 218 F. Supp. 3d 27, 38 (D.D.C. 2016).  But "the Court retains discretion to adjust the lodestar amount based on other relevant factors."  *Id*. at 47 (citing *Weisberg*, 745 F.2d at 1499-1500).

Here, Plaintiffs seek a total of $11,491.90 in attorneys' fees and $402 in costs.  ECF No. 27-2.  The requested $11,491.90 fee award includes $2,279.50 addressing work up until the parties' agreement in principle to resolve the merits of this case and $9,212.40 for negotiation over and preparation of the present motion for fees and costs.  *See id*.  "This is the tail wagging the dog, with a vengeance."  *Ustrak v. Fairman*, 851 F.2d 983, 987 (7th Cir. 1988).  And even the minimal "legal" work performed by Plaintiffs' counsel that is directly related to the litigation entails little more than preparation of boilerplate complaints and review of joint status reports—the initial drafts of which were prepared by Defendant's counsel—at an hourly rate ranging from $563 to $647.  As detailed below, Plaintiffs' fee submission is unreasonable and any fee award should be substantially reduced.

24

**A. Taxpayers Should Not Compensate Plaintiffs for Time Their Counsel Spent Addressing Duplicative and Unproductive Complaints Involving Improper Claim-Splitting.**

"An applicant for attorneys' fees is only entitled to an award for time reasonably expended." *Nat'l Ass'n of Concerned Verterans v. Sec'y of Def.*, 675 F.2d 1319, 1327 (D.C. Cir. 1982). "In deciding the reasonableness of the hours reported, [courts] properly disallow time spent in duplicative . . . or otherwise unproductive effort." *Env't. Def. Fund., Inc.*, 1 F.3d at 1258 (citation omitted).

In this case, Plaintiffs are requesting that EOIR compensate them for filing two complaints addressing the same FOIA request to EOIR even though only one complaint was needed. The initial complaint filed in this action on April 6, 2021, joined claims not only against EOIR and PRAO, but also against CISA and the DHS Office of Intelligence and Analysis and the Privacy Office. ECF No. 1 ¶ 24. But at the time that complaint was filed, Plaintiffs had already initiated another lawsuit in this district before the Honorable Timothy J. Kelly raising FOIA claims about the same FOIA request to CISA and the DHS Office of Intelligence and Analysis. *See* Compl., *Leopold v. U.S. Dep't of Homeland Security*, No. 1:21-cv-00545 (D.D.C. Mar. 2, 2021), ECF No. 1; *see also supra* note 3.

By attempting to maintain two actions addressing the same FOIA request to CISA and other DHS components in the same district court, Plaintiffs' original complaint involved improper claim-splitting. *See, e.g., Clayton v. Dist. of Columbia*, 36 F. Supp. 3d 91, 94 (D.D.C. 2014). "Plaintiffs have no right to maintain two actions on the same subject in the same court, against the same defendant at the same time." *Curtis v. Citibank, N.A.*, 226 F.3d 133, 139 (2d Cir. 2000). After discussing the issue with Plaintiffs' counsel, Plaintiffs agreed to file an Amended Complaint in this action that resolved the claim-splitting problem. But Plaintiffs are now seeking that EOIR compensate them for time spent drafting and filing both complaints and for the time spent resolving this issue with undersigned counsel even though it was entirely unnecessary to file a duplicative complaint in the first place. Accordingly, Plaintiffs' requested fee award should be reduced by $735, reflecting $615 in billing items from attorney Matt Topic addressing this unnecessary issue

and $120 for paralegal Rachael Eun for drafting the original duplicative complaint.  *See* ECF No. 27-2.

### B.  Plaintiffs Are Not Entitled to "Fees on Fees."

There is no legal right to fees-on-fees, *i.e.*, fees for time spent on fee petitions.  That is especially true where, as here, Plaintiffs did not substantially prevail, this case involved no public benefit, and Defendant's response to the request was reasonable.  Because Plaintiffs are wrong to argue that EOIR's initial decision to withhold the e-mails at issue was legally erroneous, the Court should not award Plaintiffs fees-on-fees.  It is settled that "fees for fee litigation should be excluded to the extent that the applicant ultimately fails to prevail in such litigation." *Commissioner, I.N.S. v. Jean*, 496 U.S. 154, 163 n.10 (1990).  Even where fees-on-fees are appropriate, courts in this circuit are mindful that they "must be reasonable, and not excessive." *Boehner v. McDermott*, 541 F. Supp. 2d 310, 325 (D.D.C. 2008) (citation omitted).  Courts therefore recognize their "obligation to scrutinize the hours spent preparing the fee petitions to insure that the total is reasonable and that it does not represent a windfall for the attorneys." *Id*. (citation omitted).

Plaintiffs' demand for fees-on-fees is indefensibly high.  As explained in more detail below, counsel spent egregiously more time on the fee petition than on any other filing in this case.  Such an approach merits no award.  *See Baylor v. Mitchell Rubsenstein & Associates, P.C.*, 857 F.3d 939, 960 (D.C. Cir. 2017) (Henderson, J., concurring).  In *Baylor*, the D.C. Circuit affirmed a district court's decision to deny fees-on-fees where the time that the attorneys spent preparing the fee petition was 285.7% of the time expended addressing the merits of the case.  *Baylor v. Mitchell Rubenstein & Associates, P.C.*, 735 F. App'x 733, 736 (D.C. Cir. 2018).  Here, Plaintiffs are seeking a fees-on-fees award that is more than 400% of the fee they are requesting for time spent addressing the merits.  "[T]he Court cannot require defendant to fund plaintiff's inefficient pursuit of an unacceptably large fee for an extremely modest gain for [the] client." *Baylor v. Mitchell Rubenstein & Associates, P.C.*, 282 F. Supp. 3d 203, 212 (D.D.C. 2017).

**C. Plaintiffs' "Fees on Fees" Request Should be Reduced Because it is Represents an Unreasonable Amount of Time to Spent Seeking Taxpayer Financing of the Amount of Hours Spent Addressing the Merits of This Case.**

Although no fees-on-fees award is justified given the unacceptably large fee requested for an extremely modest gain for the client, *see Baylor*, 735 F. App'x at 736, in the alternative, Defendant urges the Court to limit the amount of recoverable fees on fees to no more than fifteen percent of any merits fee award. "[F]ees on fees must be reasonable, and not excessive." *See Brennan Ctr. for Justice v. U.S. Dep't of Homeland Sec.*, Civ. A. No. 16-1609, 2019 WL 280954, at *5 (D.D.C. Jan. 22, 2019) (quoting *Elec. Priv. Info. Ctr. v. Fed. Bureau of Investigation*, 80 F. Supp. 3d 149, 162 (D.D.C. 2015)). "This means the Court must 'scrutinize' fees on fees petitions 'to insure that the total . . . does not represent a windfall for the attorneys." *Id*. (quoting *Elec. Priv. Info. Ctr.*, 80 F. Supp. 3d at 162). Courts "determine if the [amount] of time spent seeking compensation for the [amount of] hours devoted to the client was reasonable." *Merrick v. Dist. of Columbia*, 316 F. Supp. 3d 498, 517 (D.D.C. 2018). In assessing this factor, courts in this district consider whether the fees-on-fees award would be a "disproportionally large amount" compared to the fee award for the non-fee aspects of the litigation. *See Brennan Ctr. for Justice*, 2019 WL 280954, at *5; *see also Merrick*, 316 F. Supp. 3d at 518; *Cornucopia Inst. v. Agric. Mktg. Serv.*, 285 F. Supp. 3d 217, 227 (D.D.C. 2018) (finding "the total fee request is unreasonable because an undue portion of it derives from time billed for litigating and mediating the amount of attorneys' fees, rather than the merits of the underlying FOIA action") *aff'd* 2018 WL 5115535 (D.C. Cir. Oct. 11, 2018). The court also has authority to award "a fee below what a 'reasonable' fee would have been in order to discourage fee petitioners from submitting an excessive request.'" *Env't Def. Fund, Inc.*, 1 F.3d at 1258 ; *see also Baylor*, 857 F.3d at 957 (Henderson, J., concurring).

In this case, the merits stage of this case could not reasonably be considered to have extended beyond early December 2021, after the parties agreed in principle on a resolution to the merits of the case. *See* Joint Status Report, ECF No. 17 (Dec. 15, 2021). After that point, the parties were merely seeking to reach an out-of-court resolution on Plaintiffs' demand for a fee award, followed by this fee litigation. Accordingly, Plaintiffs are unreasonably seeking $9,212.40

for 14.5 hours of work seeking compensation for 5 hours of work devoted to the client. ECF No. 26-2. Again, "[t]his is the tail wagging the dog, with a vengeance." *Ustrak*, 851 F.2d at 987.

Courts in this district typically find a fees-on-fees award disproportionally large where the fees-on-fees award is still less than the fee award for the rest of the litigation, but the fees-on-fees award is a high percentage of the total awarded for the merits. For example, in *Merrick*, the court found that a fees-on-fees award "equal to approximately fifty-three percent of the fee for litigating the matter" to be "disproportionate and excessive[.]" 316 F. Supp. at 518. In *Brennan Center for Justice*, the court found that a fee award that "would be more than half of the total to be awarded for the litigation" to be "a disproportionately high amount." 2019 WL 280954, at *5. In *Baylor*, Judge Henderson thought it "inexcusable" that counsel "spent more time working on fee matters than on tasks essential to [the client's] claim." 857 F.3d at 959. Here, Plaintiffs' request for a fees-on-fees award that is more than 400% of the fee they are requesting for time spent litigating the matter is manifestly unreasonable. *See* ECF No. 27-2. Plaintiffs have identified no case where a court permitted a plaintiff to recover such an exceedingly disproportionate fee award over the objection of the defendant.

Permitting Plaintiffs to recover such a disproportionate fees-on-fees award would only serve to further exacerbate the already burdensome "mismatched incentives" that cause FOIA plaintiffs to waste judicial and party resources in circumstances where the agency's reasonable litigation conduct has resulted in there being no real dispute between the parties to litigate. *See Newman v. Fed. Bureau of Prisons*, No. 1:20-cv-3761, 2022 WL 1521797, at *5 (D.D.C. May 13, 2022) (quoting *Am. Ctr. for L. and Just.*, 573 F. Supp. 3d at 84). In those circumstances, counsel for a FOIA plaintiff who has billed their client only a few hours of time working on the case but thinks that their client is eligible for taxpayer financing of their work on both the merits and on fee litigation faces every incentive to avoid seeking a reasonable compromise on fees and instead roll the dice on a fee petition.[8] If the Court does not think it appropriate to "deny [Plaintiffs] any credit

---

[8] Plaintiffs initially demanded an out-of-court fee award from Defendant long before they even obtained the single document from EOIR. *See* ECF Nos. 17, 25. Later, they recognized that

for fee-related pleadings," *See Baylor*, 857 F.3d at 960; *see also Baylor*, 735 F. App'x at 736, Defendant instead urges the Court to consider the metric adopted by Judge Hogan in *LaShawn A. v. Barry*, Civ. No. 89-1754, 1998 WL 35243112 (D.D.C. Feb. 18, 1998), which capped the plaintiff's recovery for "fees on fees" at fifteen percent of any fee recovery from the litigation on the merits. *See id.* at *6.

**CONCLUSION**

For the foregoing reasons, the Court should deny Plaintiffs' motion for fees and costs.


Dated: September 19, 2022                    Respectfully submitted,

                                             BRIAN M. BOYNTON
                                             Principal Deputy Assistant Attorney General

                                             ELIZABETH J. SHAPIRO
                                             Deputy Branch Director
                                             Federal Programs Branch

                                             /s/ *Liam C. Holland*
                                             LIAM C. HOLLAND
                                             (*Admitted in New York*)
                                             Trial Attorney
                                             United States Department of Justice
                                             Civil Division, Federal Programs Branch
                                             1100 L Street, N.W.
                                             Washington, DC 20530
                                             Phone: (202) 514-4964
                                             Fax: (202) 616-8470
                                             E-mail: Liam.C.Holland@usdoj.gov

                                             *Attorneys for Defendant*

---

it would be "premature to move for fees and costs until after the document has been produced" and they could have the opportunity to evaluate the (minimal) benefit of the document they were seeking. *See* ECF No. 25 at 1.