UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JASON LEOPOLD, *et al.*, | ) |
| Plaintiffs, | ) |
| v. | ) Case No. 21-cv-00942-TNM |
| U.S DEPARTMENT OF JUSTICE, | ) |
| Defendant. | ) |

**PLAINTIFFS' REPLY IN SUPPORT OF THEIR FEE AND COST PETITION**

Plaintiffs are members of the news media and provided sworn evidence that there was at least a modest probability that the request would result in information in the public interest. Defendant EOIR withheld the record responsive to the request without conducting the required foreseeable harm analysis, produced the record in response to the suit rather than attempt to defend it at summary judgment, and offers only a belated justification that does not even meet the required standards for foreseeable harm. Rather than pay Plaintiffs the $2700 in attorney fees and costs that were necessary to file and litigate the case through the release of the record and were limited only to the portion attributable the record that was released, EOIR forced Plaintiffs to file a petition, and have now filed a 29-page scorched-earth opposition while simultaneously arguing that Plaintiffs should not be entitled to the fees on fees necessary to overcome it. The Court should reject EOIR's arguments and award Plaintiffs their attorney fees and costs.

### I.   ARGUMENT

"The purpose of the fee provision is to remove the incentive for administrative resistance to disclosure requests based not on the merits of exemption claims, but on the knowledge that many FOIA plaintiffs do not have the financial resources or economic incentives to pursue their requests through expensive litigation." *Morley v. CIA*, 810 F.3d 841, 844 (D.C. Cir. 2016). With

that purpose in mind, the Court should reject EOIR's efforts to avoid paying Plaintiffs the attorney fees and costs necessary to overcome EOIR's improper denial of their request.

      **A.**      **Plaintiffs are eligible for fees.**

The eligibility "standard is not particularly high," and where timing "provides evidence of causation" and the agency fails to provide evidence to the contrary, eligibility has been established. *Nat'l Sec. Couns. v. CIA*, 189 F. Supp. 3d 73, 79–80 (D.D.C. 2016) (cleaned up).

Here, EOIR denied the request based on deliberative process without conducting any foreseeable harm analysis, and OIP failed to issue a determination on Plaintiffs' appeal in violation of the statutory deadlines. *See* Pet., ECF No. 27, at 2-3. Only after the suit was filed and EOIR faced the test of proving foreseeable harm at summary judgment did EOIR produce the requested record. *Id.* This is evidence of causation. *See Nat'l Sec. Couns.*, 189 F. Supp. 3d at 79–80; *see also Cornucopia Inst. v. Agric. Mktg. Serv.*, 285 F. Supp. 3d 217, 224 (D.D.C. 2018), *aff'd*, 2018 WL 5115535 (D.C. Cir. Oct. 11, 2018) (finding "substantial causal connection" where release of records "came shortly after plaintiff filed its lawsuit, and while communications between the parties were underway"); *Dorsen v. SEC*, 15 F. Supp. 3d 112, 118 (D.D.C. 2014) ("[T]the timing of the defendant's production shortly after initiation of this lawsuit demonstrates that this suit prodded a voluntary or unilateral change in position by the agency."); *Elec. Priv. Info. Ctr. v. DHS*, 892 F. Supp. 2d 28, 37 (D.D.C. 2012) (finding causation where agency undertook a post-filing review of records to "narrow the issues for judicial review").

In response, EOIR argues that Plaintiffs should have asked pre-suit for a "discretionary release" or tried to utilize dispute resolution through the National Archives. Opp'n, ECF No. 28, at 10. But neither Congress nor courts have imposed such a requirement, and agencies are ***required*** to release records when there is no foreseeable harm from their release (*i.e.*, what EOIR calls a "discretionary" release), which is the very analysis EOIR failed to conduct pre-suit. 5 U.S.C. §

552(a)(8)(A)(i)(I).  And even if this were a legally viable argument, it fails factually: EOIR's declaration states only that it is "not unlikely" that the record would have been produced if Plaintiffs "contacted this office pre-litigation."  Schaaf Decl., ECF No. 28-1, at ¶ 16.

In *Dorsen*, the SEC similarly argued that it "discretionarily released" the record at issue and "if the plaintiff had patiently waited until resolution of the administrative appeal, he might have prevailed administratively . . . and, thus, the filing of the lawsuit did not affect[ ] anything more than the timing of the release."  15 F. Supp. 3d at 119.  The court rejected this claim as "purely speculative" considering the SEC's "assertion of proper withholding under Exemption 5 in its original response to the plaintiff's FOIA request[.]"  *Id.* at 120.  *Dorsen* also acknowledged the argument's internal consistencies: "The defendant cannot simultaneously argue that the documents would have been released in response to the plaintiff's appeal, and assert that the records were exempt from disclosure and, thus, were reasonably withheld.  The defendant cannot have it both ways."  *Id.*

The cases relied on by DOJ do not support EOIR's argument either.  Two of the six cases do not analyze eligibility at all.  *See Brayton v. Off. of the U.S. Trade Representative*, 641 F.3d 521, 524 (D.C. Cir. 2011); *N.Y.C. Apparel F.Z.E. v. Customs and Border Prot. Bureau*, 563 F. Supp. 2d 217, 220 (D.D.C. 2008).  Two more found no causation where, unlike here, the lawsuit was filed before the agency was able to make an initial determination on the FOIA request.  *Weisberg v. DOJ*, 745 F.2d 1476 (D.C. Cir. 1984); *Conservation Force v. Jewell*, 160 F. Supp. 3d 194, 199, 206-07 (D.D.C. 2016).  One found no causation where records were released because the death of a person of investigative interest caused the FBI to change its position.  *Citizens for Resp. & Ethics in Washington v. DOJ*, 83 F. Supp. 3d 297, 304-05 (D.D.C. 2015).  The last one in fact found causation where, like here, there was "no indication in the record that [the agency]

would have actually . . . released any of the contents thereof in the absence of this litigation[.]" *Church of Scientology of Cal. v. Harris*, 653 F.2d 584, 588 (D.C. Cir. 1981).  These cases are all either distinguishable, inapplicable, or support an award of fees.

> **B.** **Plaintiffs are entitled to attorney's fees and costs because all four entitlement factors favor a fee award.**

> **1.** **The public benefit of Plaintiffs' request favors a fee award.**

The public benefit factor requires an *ex ante* assessment of the potential public value of the information requested.  *Morley*, 810 F.3d at 844.  This factor favors the requester so long as there is "a modest probability of generating useful new information about a matter of public concern." *Id.*; *see also Assassination Archives & Rsch. Ctr., Inc. v. CIA*, 2019 WL 1491982, at *3 (D.D.C. Apr. 4, 2019).  "[I]f it's plausible *ex ante* that a request has a decent chance of yielding a public benefit, the public-benefit analysis ends there."  *Morley*, 810 F.3d at 844.

EOIR acknowledges that the public benefit factor requires an *ex ante* assessment, Opp'n at 13, but largely ignores that requirement and focuses on the value of the document itself.  Opp'n at 16; *see also id.* at 19 (recasting same argument under second and third factors). These *ex post* arguments are irrelevant and should be disregarded.  *Morley*, 810 F.3d at 844 ("Lest there be any uncertainty, we clarify that the public-benefit factor requires an *ex ante* assessment of the potential public value of the information requested, with little or no regard to whether any documents supplied prove to advance the public interest.").

Beyond that, EOIR offers no evidence to rebut the declaration of Mr. Leopold—a two-time Pulitzer finalist—explaining why there was at least a modest probability that EOIR would have records for which there is a public interest in disclosure.  Leopold Decl., ECF No. 27-1, at ¶¶ 4-11.  And that is the standard: Plaintiffs need not prove that the request **would** result in useful information to the public, but only that it is "plausible."  *Morley*, 810 F.3d at 844.  Given the utter

chaos on January 6 both generally and with regard to potential DOJ resignations and replacements specifically, along with the plausibility of then-President Trump using an immigration agency to support election fraud claims given his earlier claims of widespread voting by illegal immigrants in the 2016 Presidential election, Mr. Leopold's explanation shows at least a "modest probability" that something of public interest would result from the request. EOIR offers no evidence to the contrary, and its declaration admits that EOIR's purpose is to "adjudicate immigration cases," Schaaf Decl. at ¶ 4, and thus, it supports the plausibility of Plaintiffs' belief. *Morley*, 810 F.3d at 844 (weighing factor in favor of attorney fees where request for travel records of a CIA officer "might . . . have (marginally) supported one of the hypotheses swirling around the [JFK] assassination").

### 2. Plaintiffs' status as media requesters supports an award of fees.

The second and third factors are generally considered together, and favor a fee award where, as here, the requester is a member of the news media and the request is made in furtherance of reporting. *Davy v. CIA*, 550 F.3d 1155, 1160-61 (D.C. Cir. 2008); *Tax Analysts v. DOJ,* 965 F.2d 1092, 1096 (D.C. Cir. 1992). EOIR does not, and cannot, dispute that Plaintiffs are news media requesters and made the request for newsgathering purposes. *See* Opp'n at 17-20.

Instead, EOIR complains that Plaintiffs made similar requests to a large number of federal agencies as somehow diminishing the news value of the request to EOIR. *Id.* at 18. But especially given the unprecedented nature of the events of January 6, it was the ***job*** of the media to seek out as much information as possible about the involvement of government officials in matters related to it, including in places that might initially seem obscure. Similarly, EOIR cites no law that considers the number of FOIA lawsuits filed by a news media requester or its for-profit status to

be relevant to a fee award.[1]  *See id.* at 18-19.  Indeed, the New York Times—the "paper of record"—would be stripped of favorable attorney-fee status as news media using EOIR's flawed logic.  *See id.* at 18; *see also Davy*, 550 F.3d at 1161 ("Congress did not intend for . . . journalists . . . to forego compensation when acting within the scope of their professional roles.").  Beyond that, EOIR simply rehashes its arguments under the first factor and under eligibility.  Opp'n at 19.

The D.C. Circuit has made clear the difference between favored and disfavored requesters, and that difference has nothing to do with the criteria EOIR argues.  "Essentially, these two factors—in addition to the first—are meant to distinguish between "requesters who seek documents for public informational purposes" (who "typically need the fee incentive to pursue litigation") and "those who seek documents for private advantage" (who "benefit only themselves and typically need no incentive to litigate").  *Davy*, 550 F.3d at 1160.  Notwithstanding EOIR's aspersions, the record is clear that Plaintiffs are media requesters seeking records for newsgathering purposes, which supports an award of fees.

### 3. EOIR's unreasonable withholding also favors a fee award.

EOIR withheld the record at issue without addressing FOIA's foreseeable harm requirement, which requires release ***even if*** it is exempt under the deliberative process privilege.  5 U.S.C. § 552(a)(8)(A)(i)(I).  EOIR has provided no justification or even explanation for its failure

---

[1] EOIR fails to mention that Mr. Leopold's "FOIA terrorist" nickname, Opp'n at 18, derived from government emails referring to him with that term.  MuckRock, *Requester's Voice: Jason Leopold*, https://www.muckrock.com/news/archives/2013/jul/12/jason-leopold-foia-terrorist-shares-his-transparen/; Margaret Sullivan, Wash. Post., *They want their public documents. They're not taking no for an answer*, https://www.washingtonpost.com/lifestyle/style/they-want-their-public-documents-theyre-not-taking-no-for-an-answer/2016/06/21/c0581b64-36ee-11e6-a254-2b336e293a3c_story.html; *see also* Ravi Somaiya, N.Y. Times, *A Wizard at Prying Government Secrets From the Government*, https://www.nytimes.com/2015/07/20/business/a-wizard-at-prying-government-secrets-from-the-government.html (describing Mr. Leopold's extensive use of FOIA to report on government and his testimony before a Congressional committee regarding FOIA); Exhibit A (letter from Department of Homeland Security to Mr. Leopold thanking him for serving as keynote speaker at DHS FOIA event).

to address the requirement pre-suit, which alone has no reasonable basis under FOIA. Opp'n at 20-22; Schaaf Decl. at ¶ 15.

Even if the Court considered EOIR's belated attempt to satisfy the foreseeable harm requirement, however, it falls well short of the clear requirements set forth by the D.C. Circuit. All that EOIR offers is a boilerplate recitation of the justification for the deliberative process privilege with no connection to the context of the specific records at issue. Schaaf Decl. at ¶ 15. That is plainly insufficient, and there is no good-faith interpretation of binding case law that would justify it. *Reps. Comm. for Freedom of the Press*, 3 F.4th 350, 370 (D.C. Cir. 2021) ("[W]hat is needed is a focused and concrete demonstration of why disclosure of the particular type of material at issue will, in the specific context of the agency action at issue, actually impede those same agency deliberations going forward. Naturally, this inquiry is context specific."). Nor can this belated claim that release of the record would "impair similar decision-making processes in the future by hampering the willingness of senior officials to engage in candid deliberations" be reconciled with its simultaneous claim it engaged in a "discretionary release." Opp'n at 1-2. Surely an agency would not voluntarily release a record where such harms are reasonably foreseeable, or at least not without a much more detailed explanation than EOIR's vague claims of discretion.

All of this makes clear that EOIR has engaged in exactly the kind of conduct in which fees are most appropriate: in denying Plaintiffs' request, it ignored a legal requirement that was intended to address overuse of the very exemption EOIR asserted; capitulated to release after this lawsuit forced EOIR to defend its denial; provided only a boilerplate *post hoc* justification for the denial that fails to satisfy clearly established binding case law; and now has the audacity to argue that Plaintiffs should be required to foot the bill for their efforts to force compliance with the statute

instead of EOIR. *Compare Tax Analysts v. DOJ*, 965 F.2d 1092, 1097 (D.C. Cir. 1992) (weighing factor against fees where "no legal precedent" had addressed the legal issue in question). Absent an award of attorney fees in these kinds of circumstances, agencies will be incentivized to deny requests "based not on the merits of exemption claims, but on the knowledge that many FOIA plaintiffs do not have the financial resources or economic incentives to pursue their requests through expensive litigation." *Morley*, 810 F.3d at 844.

      **C.**      **Plaintiffs should be awarded all of the requested fees and costs.**

In addition to its efforts to deny Plaintiffs their attorney fees on the merits, EOIR attempts to make it impractical to recover fees in these circumstances by arguing that Plaintiffs should not receive fees on fees for the time spent litigating over the $2,681.50 in fees and costs incurred in litigating the aspect of the case on which Plaintiffs prevailed. The Court should similarly reject this effort to thwart the ability of media requesters to challenge baseless FOIA denials like EOIR's.

EOIR does not dispute any fees-on-fees time entries or claim that Plaintiffs spent an excessive amount of time in its own right litigating this fee petition. Opp'n at 26-29; *see also Citizens for Resp. & Ethics in Washington v. DOJ*, 825 F. Supp. 2d 226, 233 (D.D.C. 2011) (awarding fees for 25.5 hours on fee petition reply alone); *Elec. Priv. Info. Ctr. v. DHS*, 811 F. Supp. 2d 216, 240 (D.D.C. 2011) (awarding fees for 22 hours of fee litigation); *Nat. Veterans Legal Serv. Program v. Dep't of Veterans Affs.*, 1999 WL 33740260, at *3 (D.D.C. Apr. 13, 1999) (finding 20 hours on petition for fees plus 48 hours on the reply to be reasonable). Instead, EOIR argues only that it is disproportionate to the litigation on the merits. Opp'n at 26-29.

While disproportionately may be an appropriate consideration in certain cases, it cannot be and is not true that fees on fees cannot ever exceed some arbitrary percentage in all instances. *Conservation Force*, 160 F. Supp. 3d at 203 (fee inquiry is highly case specific). If that were the case, agencies could deny FOIA requests for records that are subject to disclosure at will and

capitulate early should litigation ensue, knowing that only a small number of requesters can afford to bring litigation absent a fee award and that the baseline amount of fees spent litigating for fees would always exceed the amount of underlying fees in these circumstances, thus making it impractical ever to seek fees.  This cannot be reconciled with the statute: "The touchstone of a court's discretionary decision under section 552(a)(4)(E) must be whether an award of attorney fees is necessary to implement the FOIA. A grudging application of this provision, which would dissuade those who have been denied information from invoking their right to judicial review, would be clearly contrary to congressional intent." *Davy v. CIA*, 550 F.3d 1155, 1158 (D.C. Cir. 2008); *see also Elec. Priv. Info. Ctr. v. DHS*, 218 F. Supp. 3d 27, 52 (D.D.C. 2016) (granting fees on fees notwithstanding agency argument that plaintiff "spent nearly as much time on the issue of attorneys' fees as on work related to summary judgment").  For example, using EOIR's 15% number here, Opp'n at 27, would permit Plaintiffs' counsel to have spent around $400 (less than one hour of lead counsel's time) litigating the fee petition, including in response to EOIR's 29-page kitchen-sink opposition.  As this demonstrates, there must be some baseline amount of time permitted to petition for fees regardless of the amount at issue, with any additional time beyond it subject to scrutiny based on the relation to the underlying fees.  And EOIR effectively concedes that Plaintiffs have not exceed a minimum baseline because it offers no challenges to any particular time entries and responded to Plaintiffs' modest eight-page petition with a 29-page opposition.

Not surprisingly, therefore, EOIR's cases are distinguishable or unpersuasive.  *Baylor v. Mitchell Rubenstein & Associates* denied fees-on-fees as a punishment for a 200-hour fee petition. 735 F. App'x 733, 736 (D.C. Cir. 2018); *see also Baylor v. Mitchell Rubenstein & Assocs., P.C.*, 857 F.3d 939, 959 (D.C. Cir. 2017) (criticizing plaintiffs for seeking fees on fees that could not be explained or justified on their own as engaging "in a time-honored bargaining tactic: make an

unreasonable opening offer in an effort to anchor the ensuing give-and-take to an artificially high (or low) range of prices") (Henderson, J. concurring)).  Plaintiffs here seek nowhere near 200 hours for their fee petition, EOIR identifies nothing excessive about the time spent on the fee petition other than its relation to the underlying fee amount, and these cases do not take any hard-and-fast "percentage" approach to fees on fees where they are reasonable standing alone.

EOIR's District Court decisions are similarly unpersuasive.  *Merrick v. District of Columbia* cites no authority for the decision to reduce fees on fees based solely on disproportionality.  316 F. Supp. 3d 498, 518 (D.D.C. 2018*).*  And *Brennan Center for Justice v. Department of Homeland Security* involved fees on fees that were excessive in their own right.  No. CV 16-1609 (ABJ), 2019 WL 280954, at *5 (D.D.C. Jan. 22, 2019).  Neither case addresses or can be reconciled with the purpose of the attorney fee provision.  *See Davy*, 550 F.3d at 1158.

Further, it should not be lost on the Court that in response to a $2700 fee petition, EOIR has filed a 29-page opposition brief.  Ultimately, fees are about reasonableness.  *See* Opp'n at 24.  Thus, under EOIR's logic, DOJ attorneys have wasted significant taxpayer-funded time in drafting an opposition that is disproportionate to the amount of fees being sought, and Plaintiffs cannot be said to have spent an unreasonable amount of time in their own substantially shorter fee petition.  At the very least, even if the Court were to discount Plaintiffs' time filing the petition commensurate with the amount of merits fees, it should not reduce the time spent responding to EOIR's opposition, since Plaintiffs had no choice but to respond to EOIR's lengthy arguments on eligibility, every entitlement factor, and the reasonableness of fees.

Finally, EOIR argues that the award should be reduced by $735 reflecting the time spent amending the complaint.  But Plaintiffs explained that they eliminated time spent unrelated to the EOIR claims, Topic Decl. ¶ 3, and courts do not "engage in a minute examination of each theory

or claim advanced and what results it did or did not produce." *Nat'l Ass'n of Concerned Veterans v. Sec'y of Def.*, 675 F.2d 1319, 1332–33 (D.C. Cir. 1982).

### D. The Court should award an additional $11,357.40 for the time spent preparing this reply brief.

As explained in the attached Second Topic Declaration, Plaintiffs are entitled to an additional $11,357.40 for time spent drafting this reply brief in response to EOIR's 29-page opposition. The amount of those fees are entirely of EOIR's own making, and reflect reductions in the exercise of billing judgment as explained in the Second Topic Declaration.

## II. CONCLUSION

For these reasons, the Court should award total fees and costs of $23,251.30.

Dated: October 3, 2022

RESPECTFULLY SUBMITTED,

/s/ *Matthew V. Topic*

_____

Attorneys for Plaintiffs

Matthew Topic, DC Bar No. IL0037
Josh Loevy, DC Bar No. IL0105
Merrick Wayne, DC Bar No. IL0058
Shelley Geiszler, DC Bar No. IL0087
(E-Mail: foia@loevy.com)
LOEVY & LOEVY
311 N. Aberdeen, Third Floor
Chicago, Illinois 60607
Tel.: (312) 243-5900
Fax: (312) 243-5902